Opinion for the court filed by Circuit Judge BRYSON. Concurring in part and dissenting in part opinion filed by Circuit Judge NEWMAN.
BRYSON, Circuit Judge.
Wm. Wrigley Jr. Co. and Cadbury Adams USA LLC compete in the consumer market for chewing gum. This case involves chewing gum that provides a cooling sensation when chewed. Historically, chewing gum makers have achieved that cooling sensation (known as “physiological cooling”) by adding menthol to their products. Menthol, however, has disadvantages, including a strong peppermint flavor and bitterness in high concentrations. During the 1970s and 1980s, Wilkinson-Sword Ltd. attempted to develop physiological cooling agents that would not have the drawbacks of menthol. The result was two such coolants, which were released under the trade names ‘WS-3” and WS-23.” Wrigley and Cadbury each own a patent that generally claims chewing gum containing a combination of menthol and one of those coolants. Cadbury owns U.S. Patent No. 5,009,893 (“the '893 patent”), which claims a chewing gum that combines menthol with WS-3. Wrigley owns U.S. Patent No. 6,627,233 (“the '233 patent”), which claims a chewing gum that combines menthol with WS-23.
The application that matured into Cad-bury’s '893 patent was filed in July 1989. Claim 1, one of two independent claims of the '893 patent, recites:
1. A chewing gum composition capable of providing long-lasting, breath freshening perception without bitterness comprising a gum base, a sweetener and a cooling composition comprising menthol and an N-substituted-p-menthane carboxamide of [a specific formula.]
WS-3 is an N-substituted-p-menthane carboxamide and one of the compounds described by the formula recited in claim 1. The claim, therefore, reads on chewing gum that combines WS-3 (and other N-substituted-p-menthane carboxamides of *1359 the recited formula) and menthol. The patent’s specification discloses that although the cooling effect of both menthol and WS-3 were known in the prior art, the combination of the two “results in an unexpected heightened cooling sensation in edible products.” Cadbury introduced into the market a variety of chewing gum products that embody the claims of the '893 patent. Those products did well in the marketplace.
After Cadbury introduced its WS-3/menthol chewing gum, Wrigley introduced a chewing gum that combined menthol and WS-23. That product was the commercial embodiment of claim 34 of Wrigley’s '233 patent. The application for the '233 patent was filed in March 2000. Claim 34 recites:
34. A chewing gum composition comprising:
a) about 5% to about 95% gum base;
b) about 5% to about 95% bulking and sweetening agent; and
e) about 0.1[%] to about 10% flavoring agent wherein the flavoring agent comprises N-2,3-trimethyl-2-isopropyl butanamide and menthol.
WS-23 is the trade name for N-2,3-trimethyl-2-isopropyl butanamide.
Following the introduction of Wrigley’s WS-23/menthol chewing gum, Cadbury reformulated some of its chewing gum products. Cadbury’s reformulated chewing gum contained both WS-23 and menthol. Wrigley then filed suit against Cadbury in the United States District Court for the Northern District of Illinois, accusing Cad-bury’s reformulated chewing gum of infringing the '233 patent. Cadbury counterclaimed, accusing Wrigley’s chewing gum of infringing Cadbury’s '893 patent.
Wrigley and Cadbury each moved for summary judgment on a number of issues. Cadbury sought summary judgment declaring claim 34 of the '233 patent invalid for obviousness and anticipation. Wrigley sought summary judgment declaring that it had not infringed the asserted claims of the '893 patent.[2]
The district court granted Wrigley’s motion for summary judgment of noninfringement of the '893 patent. The court first noted that WS-23 is not an N-substituted-p-menthane carboxamide, so a combination of WS-23 and menthol would not literally infringe the '893 patent. The court further found that the '893 patent narrowly claimed the combination of N-substituted-p-menthane carboxamides and menthol, and that it implicitly excluded other carboxamides, including WS-23. The court therefore held that a combination of WS-23 and menthol did not infringe the '893 patent under the doctrine of equivalents.
Addressing Cadbury’s summary judgment motion, the district court concluded that claim 34 of the '233 patent was invalid on grounds of anticipation and obviousness. The court held claim 34 to be anticipated by U.S. Patent No. 5,688,491 (“Shahidi”), and obvious in view of U.S. Patent No. 5,698,181 (“Luo”) and an article written by Dr. M.A. Parrish (“Parrish”).
Shahidi is directed to a variety of oral compositions, each of which contains xylitol and copper bis-glycinate. The composi *1360 tions include chewing gum as well as other compositions, such as toothpaste, mouth rinses, and lozenges. Shahidi lists several categories of components that can be included in the compositions. They include both “essential” and “optional” (or “nonessential”) components; certain of the optional components are noted as “preferred.” A “cooling agent or combination of cooling agents” is such a “preferred nonessential” component. Some of the categories further identify certain specific components as “preferred.” Within the category of cooling agents, Shahidi discloses WS-3 and WS-23 as two of three “particularly preferred cooling agents.” Shahidi also discloses menthol as one of 23 listed flavoring agents that can be used in the claimed compositions.
The district court found that Shahidi discloses every limitation of claim 34. In making that determination, the district court relied on a patent, incorporated by reference into Shahidi, which provided a range for the amount of WS-23 to include in a composition. That range is a subset of the range for the amount of flavoring agent recited in claim 34. The court further ruled that Shahidi would have disclosed to one of ordinary skill in the art how to create a cooling chewing gum with component amounts in the ranges claimed by claim 34. The court therefore held that Shahidi anticipated claim 34.
Luo discloses chewing gum that achieves a cooling effect by combining WS-3 and menthol, and it also discloses combining N-substituted-p-menthane carboxamides with menthol. Parrish, which was published in 1987, describes WS-3 and WS-23 as potential replacements for menthol in a variety of applications, including chewing gum. Parrish highlights that both WS-3 and WS-23 have “high cooling activity with no side-effects.” Parrish does not distinguish the cooling activity of WS-3 and WS-23, although it notes that WS-3, but not WS-23, had been listed as “generally regarded as safe” by the Flavor and Extract Manufacturers Association (“FEMA”). That approval, referred to as “FEMA-GRAS listing,” was subsequently extended to WS-23.
The district court held that, in light of the disclosures of Luo and Parrish, the only novel aspect of claim 34 was the combination of menthol and WS-23. Although Parrish teaches substituting WS-23 for menthol, rather than combining the two, the court found that Parrish would have made it obvious to substitute WS-23 for WS-3 in the combination of menthol and WS-3 that was disclosed in Luo. The court also ruled that the evidence of secondary considerations proffered by Wrigley was not sufficient to overcome the strong showing of obviousness and establish that claim 34 was “an invention appearing to have been obvious in light of the prior art [that] was not.” Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed.Cir.1983).
I
On appeal, Wrigley argues that Shahidi does not anticipate claim 34 for two reasons. First, Wrigley argues that while Shahidi discloses all the claim limitations found in claim 34, it does not disclose them in the combination recited in that claim.[3] Second, and relatedly, Wrigley ar *1361 gues that Shahidi would not have enabled a person of ordinary skill in the art to derive the combination recited in claim 34 without undue experimentation.
For a prior art reference to anticipate a claim, it must disclose all of the limitations of the claim, “arranged or combined in the same way as in the claim.” Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1370 (Fed.Cir.2008). For example, in Net MoneyIN, this court held that an “Internet payment system” was not anticipated by a prior art reference that disclosed all the components of the invention, because the reference disclosed two separate payment protocols, each of which contained only a subset of the components claimed in the patent at issue. Id. at 1371. Therefore, the reference did not “prove prior invention of the thing claimed.” Id.
In this ease, by contrast, Shahidi envisions using WS-23 and menthol in a single product. While Shahidi discloses a number of different combinations of cooling and flavoring elements, one of them is the combination of menthol, which Shahidi identifies as one of the “most suitable” flavoring agents, with WS-23, which Shahidi identifies along with WS-3 as among a group of three “particularly preferred cooling agents.” Based on the disclosure of the combination of those components, we agree with the district court that Shahidi anticipates claim 34.
This is not a case in which the prior art reference merely discloses a genus and the claim at issue recites a species of that genus. In such a case, the issue of anticipation turns on whether the genus was of such a defined and limited class that one of ordinary skill in the art could “at once envisage” each member of the genus. Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., 471 F.3d 1369, 1376 (Fed.Cir.2006). Shahidi specifically discloses WS-23 as a coolant and menthol as a flavoring agent. The question for purposes of anticipation is therefore whether the number of categories and components in Shahidi was so large that the combination of WS-23 and menthol would not be immediately apparent to one of ordinary skill in the art. See Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1377 (Fed.Cir.2005) (distinguishing cases in which a prior art reference discloses a genus from those in which it discloses a number of species as part of a list).
Wrigley argues that Impax Laboratories, Inc. v. Aventis Pharmaceuticals Inc., 545 F.3d 1312 (Fed.Cir.2008), stands for the proposition that a prior art reference is not anticipatory if one of ordinary skill in the art would be required to pick items from two lists of components in order to assemble the invention. The issue in Impax was whether the use of the drug riluzole for treating amyotrophic lateral sclerosis (“ALS”) was anticipated by U.S. *1362 Patent No. 5,236,940 (“the '940 patent”). Id. at 1314. The '940 patent disclosed a formula that encompassed “hundreds or thousands of compounds.” Id. at 1315. The '940 patent also listed a number of diseases, including ALS, that could potentially be treated with compounds of the disclosed formula. Id. While we affirmed the district court’s finding that undue experimentation would have been required to practice the patent at issue in Impax, there are important distinctions between that case and this one. Unlike the prior art reference at issue in Impax, where there was no disclosed dosage information for using riluzole to treat ALS, see id., Shahidi discloses component amounts within the ranges claimed in claim 34. Even more importantly, Shahidi specifically discloses the use of both WS-23 and menthol in chewing gum, whereas the only mention of riluzole in the prior art reference in Impax was to disclaim it from the disclosed invention. See id. (“the '940 patent ... specifically excludes riluzole from the invention”).
Given the objective of the '233 patent, to obtain “a cooling flavor composition that will contribute a long-lasting cooling sensation” and a chewing gum with a “clean, high-quality flavor ... with a good cooling effect,” the Shahidi reference clearly identifies the combination of WS-23, which Shahidi identifies as one of three “particularly preferred” cooling agents, and menthol, which Shahidi identifies as being among the “most suitable” flavoring ingredients.[4] The district court therefore correctly held that Shahidi anticipates claim 34 of the '233 patent.
II
Wrigley also argues that the district court erred in finding that the combination recited in the '233 patent would have been obvious in light of Luo and Parrish. In particular, Wrigley argues that the combination of WS-23 and menthol resulted in unexpected cooling, beyond what would have been predicted by one of ordinary skill in the art.
Evidence that a combination of known components results in an effect greater than the predicted additive effect of the components can support a finding of nonobviousness. See Crocs, Inc. v. Int’l Trade Comm’n, 598 F.3d 1294, 1309 (Fed. Cir.2010) (“Even if the [patent at issue] were a combination of known elements according to their established functions ... it yields more than predictable results [and therefore is] non-obvious.”); Merck & Co. v. Biocraft Labs., Inc., 874 F.2d 804, 808 (Fed.Cir.1989). In this case, however, the synergistic effect of combining coolants had already been discovered, as reflected in the prior art. Luo disclosed a “synergy” between menthol and WS-3, when menthol was included in high amounts, and disclosed that the combination produced an “enhanced breath-freshening effect” in which each component played “a vital role.” Parrish identified WS-3 and WS-23 as especially favored cooling agents for commercial use from among 1200 tested compounds that induced a cooling effect. Moreover, Parrish pointed to four characteristics shared by the WS-3 and WS-23 molecules that were associated with their physiological cooling effect, suggesting *1363 that the two compounds would likely have similar effects when ingested. Therefore, to show that the cooling effect of the combination of WS-23 and menthol was unexpected, Wrigley needed to demonstrate that the results were unexpected to a significant degree beyond what was already known about the effect of combining WS-3 and menthol. See Ex parte Nutrasweet Co., 19 U.S.P.Q.2d 1586, 1589 (B.P.A.I.1991) (“It would at least be necessary to demonstrate that the improvements observed were greater to an unobvious extent than those which would have been expected from the reference teachings and that those differences were of some significant, practical advantage.”).
As evidence that the claimed combination produced unexpected results and drove the commercial success of Wrigley’s chewing gums, Wrigley points to an internal Cadbury study comparing Wrigley and Cadbury products. That study concluded that the flavor and cooling features of Wrigley’s products were superior to those of the Cadbury products with which they were compared. The study noted, however, that besides having a “newer, more advanced cooling system,” the tested Wrigley products differed from the comparable Cadbury products in a number of other ways, including having sweetener levels three times higher than Cadbury’s products; more encapsulated sweeteners for longer sweetness duration; higher gum base and filler levels that allowed for a more efficient flavor release; and significantly more expensive ingredients. Moreover, the “cooling system” used in Wrigley’s products was not simply a combination of menthol and WS-23, as recited in claim 34 of the '233 patent. Instead, as the district court noted, it was a formulation that “contained menthol and WS-23 along with several other ingredients,” and the menthol and WS-23 components were present in quantities not specifically identified in claim 34. Therefore, Cadbury’s study does not demonstrate that the broadly claimed combination recited in claim 34 results in unexpected cooling beyond the degree that was already predictable based on the prior art.
The same analysis applies to Wrigley’s argument that the commercial success of its chewing gum containing menthol and WS-23 shows that the claimed invention was nonobvious. As the district court noted, for commercial success to be probative evidence of nonobviousness, a nexus must be shown between the claimed invention and the evidence of commercial success. In this case, the district court concluded, Wrigley failed to establish such a nexus. Rather, the court observed, in the documents on which Wrigley relies, “many factors were identified as contributing to [Wrigley’s commercial] success, including marketing efforts, the way in which the gum was packaged, the amounts of gum base and sweeteners used, and the cooling system used.” In sum, the district court found “no evidence of any nexus between the success of Wrigley’s chewing gums covered by Claim 34 and the specific combination of menthol and WS-23,” and therefore held that “the fact that Wrigley’s gums are successful does not alter the obviousness analysis.”
For the reasons given by the district court, we agree that Wrigley has not established a sufficient nexus between the invention of claim 34 of the '233 patent and the success in the marketplace of its chewing gum products that contain a combination of menthol and WS-23. Cadbury’s internal study of Wrigley’s product showed that it differed from Cadbury’s comparable product in several ways that could have *1364 contributed to the commercial success of Wrigley’s gum. Because the evidence does not show that the success of Wrigley’s product was directly attributable to combining WS-23, rather than WS-3, with menthol, the district court properly discounted the evidence of commercial success as a secondary consideration rebutting Cadbury’s showing that the claimed invention would have been obvious.
Wrigley also argues that evidence that Cadbury copied the combination of WS-23 and menthol shows that the combination would not have been obvious. In some cases, evidence that a competitor has copied a product embodying a patented invention can be an indication of nonobviousness. See Iron Grip Barbell Co. v. USA Sports, Inc., 392 F.3d 1317, 1325 (Fed.Cir.2004). However, as the district court observed, “[j]ust as with the commercial success analysis, a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis.” The district court acknowledged that Wrigley had shown through internal documents that Cadbury had sought to copy Wrigley’s invention by adding WS-23 to the cooling agents of some of its products. But the court added that Wrigley had not shown evidence suggesting that “the novel combination of WS-23 and menthol is what led Cadbury to copy Wrigley’s chewing gums,” and in the absence of that evidence, the court found that Wrigley had failed to establish the requisite nexus between “Cadbury’s copying and the merits of the claimed invention.”
Besides the absence of evidence of a nexus between Cadbury’s copying and Wrigley’s claimed invention, there is evidence suggesting the contrary. In particular, the evidence shows that in the market for chewing gum the parties have a practice of marketing very similar products. While Cadbury’s internal documents show that it sought to reformulate its products to match Wrigley’s products, that desire extended not just to the inclusion of WS-23, but to the inclusion of similar sweeteners and similar levels of each. Wrigley’s evidence of copying is therefore not a strong indicator of nonobviousness, but rather a measure of the extent to which parties in the chewing gum market typically copy any development by their competitors, whether patented or not.
This case presents a strong case of obviousness based on the prior art references of record. Claim 34 recites a combination of elements that were all known in the prior art, and all that was required to obtain that combination was to substitute one well-known cooling agent for another. Luo taught the physiological cooling effect from combining menthol with WS-3. Parrish showed that WS-3 and WS-23 were the two most attractive cooling agents for commercial use from among 1200 cooling agents tested. Shahidi taught the combination of menthol and cooling agents, of which WS-3 and WS-23 were two of the three most preferred candidates. And a prior art 1995 patent owned by The Procter & Gamble Company (U.S. Patent No. 5,451,404), specifically refers to the combination of menthol and WS-23, along with other components, in a composition designed to produce physiological cooling. Under these circumstances, it is fair to say that there were “a finite number of identified, predictable solutions” to the problem of finding physiological cooling agents for chewing gum, and that the combination of menthol and WS-23 was “the product not of innovation but of ordi *1365 nary skill and common sense.” KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). This case is thus one in which a person of ordinary skill in the art would find it “obvious to try” the combination recited in claim 34. Id. We therefore uphold the district court’s conclusion that, even in light of the evidence of secondary considerations, claim 34 would have been obvious in light of Luo and Parrish.[5]
Ill
In its cross-appeal, Cadbury argues that the district court made two errors regarding the '893 patent, both of which involve whether chewing gum formulations that combine menthol with WS-23 are within the patent’s scope. First, Cadbury argues that in its claim construction ruling the district court improperly found that the '893 patent disclaimed certain compounds, including WS-23. Second, Cadbury argues that the court erred in ruling that the doctrine of equivalents could not be used to extend the reach of the '893 patent to cover a chewing gum containing a combination of menthol and WS-23.
In its opening claim construction brief, Cadbury argued that the term “N-substituted-p-menthane carboxamide” should be construed according to its ordinary meaning. Wrigley responded that the '893 patent should be read to exclude all compounds other than N-substituted-p-men-thane carboxamides. That would exclude WS-23, which is not an N-substituted-pmenthane carboxamide. In its reply brief on claim construction, Cadbury argued that the patent did not disclaim compounds other than “WS-3 and its related carboxamides,” and in particular that the patent did not disclaim WS-23. The district court agreed with Wrigley that the '893 patent disclaimed all compounds other than N-substituted-p-menthane carboxamides and construed the term “N-substituted-p-menthane carboxamide” to mean “a class of molecules with the chemical formulas set forth in Claims 1 and 12 of the '893 Patent.”
On appeal, all parties now agree that the claimed N-substituted-p-menthane carboxamides do not include WS-23. Wrigley’s products are therefore plainly not within the literal scope of the claims of the '893 patent. While Cadbury argues that Wrigley’s products infringe under the doctrine of equivalents, we agree with the district court that WS-23 is not an equivalent of WS-3 for purposes of the '893 patent.
As the district court noted, the disclosure of the '893 patent focuses narrowly on N-substituted-p-menthane carboxamides, and not on carboxamides generally. The “Summary of the Invention” section states that “[a]pplicants have unexpectedly found that N-substituted-p-menthane car *1366 boxamides when used in combination with menthol in specific amounts results in an unexpected heightened cooling sensation in edible products.” The specification adds that certain species of N-substituted-pmenthane carboxamides — and not carboxamides generally — “are quite similar structurally to menthol itself.” While there is some dispute as to the mechanism by which WS-3 and WS-23 provide cooling sensation, it is clear that WS-23 is not structurally similar to menthol in the same way that N-substituted-p-menthane carboxamides are. Finally, the claims themselves are narrow, not even claiming all N-substituted-p-menthane carboxamides, but only a subset of those compounds. See Tanabe Seiyaku Co. v. Int'l Trade Comm’n, 109 F.3d 726, 732 (Fed.Cir.1997) (narrow language in the claims and specification can preclude use of doctrine of equivalents to reach beyond what is literally claimed); see also Bicon, Inc. v. Straumann Co., 441 F.3d 945, 955 (Fed.Cir.2006) (“A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents.”).
Cadbury’s argument that Abraxis Bioscience, Inc. v. Mayne Pharma Inc., 467 F.3d 1370 (Fed.Cir.2006), compels a different result is unavailing. The issue in Abraxis was whether diethylenetriaminepentaacetic acid (“DTPA”) could be considered as an equivalent of edetate. Both compounds belonged to “a broad class of structurally analogous compounds known as polyaminocarboxylic acids.” Id. at 1379 n. 7. The patentee, however, had narrowly claimed edetate. Id. at 1381. We rejected the argument that such narrow claiming precluded the patentee from arguing that DPTA was an equivalent of edetate. Id. at 1380. In so finding, we relied on the fact that it was unknown at the time of the invention that the properties of DTPA made it a suitable substitute for edetate in the claimed invention. Id. at 1381-82. Because it was unknown that DTPA and edetate were interchangeable, the patentee had no reason to claim DTPA, and we therefore held that DTPA could be considered to be within the scope of the patent under the doctrine of equivalents. Id.; see also Kinzenbaw v. Deere & Co., 741 F.2d 383, 389 (Fed.Cir.1984) (“The doctrine of equivalents is designed to protect inventors from unscrupulous copyists and unanticipated equivalents.”).
The facts of this case support the opposite inference. The inventors of the '893 patent were introduced to WS-3 and WS-23 by a salesman for Sterling Organics, the distributor of the compounds, during the same sales call, and they were told that the two compounds were appropriate for the same uses. Although the fact that WS-23 did not enjoy FEMA-GRAS listing at the time of the invention might have prevented Cadbury from marketing a chewing gum containing a combination of WS-23 and menthol, it would not have precluded the inventors from anticipating that WS-23 could be used as a substitute for WS-3. Thus, the inventors were on notice of the potential interchangeability of WS-23 and WS-3, yet they drafted the claims of the '893 patent narrowly to recite certain N-substituted-p-menthane carboxamides, not a broader category of carboxamides that would include WS-23. The trial court therefore properly held that Cadbury could not expand the coverage of its patent to include WS-23 through the doctrine of equivalents.
Each party shall bear its own costs for this appeal.
AFFIRMED

. This appeal concerns Wrigley’s “production” gum. Cadbury moved for summary judgment that certain experimental chewing gum produced by Wrigley infringed the '893 patent. The district court denied that motion, and Cadbury has not pursued that issue on appeal.

. Cadbury contends that in the district court Wrigley failed to make that argument, as well as its argument that unexpected results show the '233 patent was not obvious. For that reason, Cadbury contends, Wrigley has waived those arguments. We conclude that *1361 Wrigley presented the essence of its present arguments to the district court sufficiently to preserve those arguments for appeal. See Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326, 1338 n. 11 (Fed.Cir.2005). In the district court, Wrigley argued that because Shahidi disclosed "a large number of optional or non-essential categories of ingredients,” it did not disclose “the combination of 'menthol' and WS-23 in a chewing gum composition.” Although in much abbreviated form, that is essentially the same argument Wrigley makes as to anticipation on appeal. As for obviousness, Wrigley’s argument as to unexpected results was also skimpy, but it asserted that "the performance of WS-23 in combination with menthol in chewing gum applications would not have been predicted by one of ordinary skill in the art,” which was enough to preserve the "unexpected results” argument for appeal.

. While the dissent notes that Shahidi listed a number of flavoring agents, a person of ordinary skill in the art would recognize menthol as extremely well known in the prior art for inclusion in a cooling gum. The fact that one of ordinary skill in the art might also have included other flavorings would not remove the resulting composition from the broad reach of claim 34.

. We do not adopt a "formal burden-shifting framework," see In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1077 (Fed.Cir.2012), nor did the district court. As noted in Cyclobenzaprine, use of the terms "prima facie” and "rebuttal” in addressing an invalidity challenge does not constitute reversible error as long as the court "consider[s] all evidence of obviousness and nonobviousness before reaching a determination” and does not shift the burden from the patent challenger. Id. In this case, the district court addressed the objective considerations put forth by Wrigley prior to making a determination of obviousness. The district court in Cyclobenzaprine, by contrast, concluded that "the invention was obvious” before considering the objective factors. In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 794 F.Supp.2d 517, 537 (D.Del.2011).