SCHALL, Circuit Judge,
dissenting-in-part.
I am pleased to join Parts I, III, and IV of the court’s opinion. However, I respectfully dissent from Part II. For the reasons set forth below, I believe the Board erred in finding claims 2-15, 20-23, and 29 of U.S. Patent No. 7,664,516 (the '516 patent); claims 7-16 and 23-27 of U.S. Patent No. 8,155,679; claims 1-5 of U.S. Patent No. 8,457,670; and claims 1, 4-6, 10, and 14 of U.S. Patent No. 8,438,-055 anticipated by U.S. Patent Application Publication No.2002/0169835 Al by Paul, JR. etal. (“Paul”).
I.
A.
Paul describes an internet-based communications system that allows organizations (e.g., Amazon.com) to broadcast emails to their members (e.g., individual consumers with Amazon.com accounts). See Paul at ¶¶ 10, 21. The system includes an application program, or “campaign manager,” that provides organizations with various “routine” or “tool” options for communicating with their members. Paul at ¶¶ 34, 51, 100. One such tool option (the “direct-email tool”) enables organizations to develop and manage direct marketing campaigns through which “personalized ... e-mails” may be sent to “selected members” who are pulled from an organization’s membership database based upon selected demographic criteria. Paul at ¶¶ 51, 64, 66-67 (emphasis added). The personalized emails may include, for example, an advertisement for a business with a hyperlink to the business’s website. Paul at ¶ 95. Another tool option (the “refer-a-friend tool”) uses a referral campaign to attract new members. See Paul at ¶¶ 101-02. In this campaign “[ajll the members” of an organization receive a “refer a friend e-mail” that includes a hyperlink to the organization’s “new member website.” Paul at ¶ 101 (emphasis added). If a current member forwards the email to one or more friends and a friend clicks on the link, the current member may receive a reward. See Paul at ¶ 102. In this way, current members are motivated to increase the organization’s membership. Paul at ¶ 102.
Although the relevant claims vary in scope, I agree with the majority that, for *1352 purposes of this appeal, claim 2 of the '516 patent is representative of the claimed subject matter. Relevant to the issue of anticipation, that claim provides as follows:
2. A method for providing access to an advertisement from an advertiser to a source communication device possessed by a subscriber and distributing the access to the advertisement from the source communication device to a destination communication device possessed by a recipient, wherein the destination communication device is compatible with the source communication device, and the recipient having a relationship to the subscriber, the method comprising the steps of:
(1) comparing a desired demographic profile to a subscriber demographic profile to derive a match;
(2) establishing a bi-lateral endorsement between the subscriber and the advertiser;
(3) providing a subsidy program to the subscriber based on the match; ...
(4) activating an endorsement manager in the source communication device;
(5) initiating a communication session between the source communication device and the destination communication device; ... and
(6) recognizing a subsidy, according to the subsidy program, for the subscriber after a termination of the communication session.
'516 patent at 7:45-8:3 (numerals and emphases added).
In finding claim 2 anticipated by Paul, the Board relied upon, inter alia, the direct-email and refer-a-friend tools. For example, and as relevant here, the Board found the first limitation met by Paul’s disclosure of the direct-email tool. Regarding the third limitation, the Board found that Paul discloses “providing a subsidy program to the subscriber” through the description of the refer-a-friend tool. The Board did not however find that the refer-a-friend tool provides a subsidy “based on the match,” a claim element linked to the first limitation. Only by finding that the direct-email and refer-a-friend tools would be used together did the Board conclude that Paul discloses providing a subsidy “based on the match.”
The Board, in making this finding, acknowledged that Paul “does not disclose expressly an example in which a direct email campaign to send targeted advertisements based on demographics of members is used with a ‘refer-a-friend’ campaign involving incentive-based referrals.” Nor does Paul, the Board recognized, “indicate expressly that any of the [tools] ... can be used with any other one of the ... [tools].” The Board nevertheless found that one of ordinary skill in the art “would understand” that the direct-email and refer-a-friend tools are “to be used in conjunction ... to send ‘refer-a-friend’ e-mail message incentives to [selected] members based on member demographic characteristics.” In other words, the Board found that the refer-a-friend tool would be used to create a referral email, but instead of sending the referral email to all members using that tool (as described in Paul), one of skill in the art would know to use the direct-email tool to send the referral email to selected members based on a demographic match.
From its findings and discussion of Paul, there is no question the Board did not rely upon an express disclosure of the claimed invention to support its ultimate anticipation finding. What the Board does not answer, however, is which alternative anticipation theory it applied; namely, anticipation by inherency or anticipation because a person of skill in the art, reading Paul, would “at once envisage” the claimed arrangement.
*1353 B.
In affirming the Board’s finding of anticipation, the majority views Paul, in particular paragraph 29, as “explicitly eontemp-lat[ing] the combination of the disclosed functionalities” of the direct-email and refer-a-friend tools. Maj. Op. 1342-44. The majority also reads the Board’s decision as having “found that [Paul] ... disclosefs] a limited number of tools” and also as having “found that ... a skilled artisan would ‘at once envisage’ the combination of ... the refer-a-friend and [direct-email tools] to arrive at the system claimed” by Blue Calypso. Maj. Op. 1344 (emphasis added). Based on these apparent findings by the Board, the majority concludes that the facts of this case are akin to those in Kennametal, Inc. v. Ingersoll Cutting Tool Co., 780 F.3d 1376 (Fed.Cir.2015), where we found that a prior art reference anticipated certain claims even without disclosing all the claimed limitations.
II.
A.
An invention is unpatentable by reason of anticipation if it “was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.” 35 U.S.C. § 102(b) (2006).[1] A prior art reference cannot anticipate “unless [it] discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim.” Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed.Cir.2008). Prior art can, however, anticipate a claim even if it “d[oes] not expressly spell out” all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would “at once envisage” the claimed arrangement or combination, In re Petering, 49 CCPA 993, 301 F.2d 676, 681 (1962), or if the “missing descriptive matter is necessarily present,” or inherent, in the reference, Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed.Cir.1991). “Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claims limitations, it anticipates.” Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1376 (Fed.Cir.2005) (quoting MEHL/Biophile Int’l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed.Cir. 1999)).
B.
I agree with the majority that the Board’s holding of unpatentability based on anticipation necessarily hinges on a finding distinct from an express disclosure of the invention of claim 2 of the '516 patent. Given the majority’s reliance on Kennametal and its view of the Board’s purported findings, it seems to me the majority concludes that we should affirm because one skilled in the art would “at once envisage” the claimed invention when reading Paul. I part company with the majority on this point, for this case, I believe, is governed by Net MoneyIN. In my view, the Board erred in finding that Paul discloses the third limitation of claim 2, i.e., “providing a subsidy program to the subscriber based on the match.” (Emphasis added.) The Board relied on a combination of the direct-email and refer-a- *1354 friend tools to meet this limitation; yet, the Board recognized that Paul fails to explicitly disclose any such combined use. As noted, the Board made up for this shortcoming in Paul by finding that one of ordinary skill in the art “would understand” that the two tools are “to be used in conjunction.”[2]
Although anticipation typically cannot be found without an express or inherent disclosure, there is a line of cases where “the issue of anticipation turns on whether [a disclosed] genus was of such a defined and limited class that one of ordinary skill in the art could ‘at once envisage’ each member of the genus.” Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC, 683 F.3d 1356, 1361 (Fed.Cir.2012). For example, in Ken-nametal, the case upon which the majority relies, the claimed invention was a cutting tool having a substrate comprising “hard particles and a binder” and a “physical vapor deposition coating on at least a portion of the substrate.” 780 F.3d at 1379. The prior art reference disclosed all the elements of the claimed cutting tool within the reference, but did not expressly disclose an example of the tool with the claimed, coating. Id. at 1382. However, because the reference “expressly ‘con-templatfed]’ ” the claimed coating as one of three possible coatings, we found the claims anticipated because one of skill would “immediately envisage applying [the claimed] coating.” Id. at 1383.
This case, in my view, is distinguishable from Kennametal for at least three reasons. First, the Board did not. find or even suggest, nor did Groupon argue, that the claimed process at issue here is a species of some genus disclosed by Paul. Second, even if the “at once envisage” line of cases is applicable here, claim 2 is not a system claim requiring the mere presence of the right combination of tools (i.e., the direct e-mail and refer-a-friend tools) for anticipation. Rather, anticipation of method claim 2 requires not only that both tools be used, but also that specific functions among the tools’ various functions be combined. And third, Paul does not contemplate — expressly or otherwise — combining the direct-email and refer-a-friend tools to perform the step recited in the third limi *1355 tation. Groupon’s expert conceded this point. Even putting these distinctions aside, Kennametal still, I think, does not support the majority’s conclusion because — contrary to the majority’s apparent view of the Board’s decision — the Board did not find that one of skill in the art would “at once” or “immediately” envisage the combined use of the direct-email and refer-a-friend tools. Absent such a finding, Paul could only anticipate the third limitation by expressly or inherently disclosing the combination, and, as explained above, I see no such disclosure in Paul.
I recognize the Board cited to various portions of Paul that, in its view, would lead one of skill to conclude that the direct-email and refer-a-friend tools would be used together. However, in my view, nothing in those paragraphs supports the Board’s ultimate finding of anticipation, regardless of which anticipation theory the Board may have applied. For example, the Board quoted from paragraph 29 of Paul, which explains that the invention
may be produced in a single computer system having (1) separate elements or means for performing the individual steps described or claimed or (2) one or more elements or means combining the performance of any of the functions or steps disclosed or claimed, or may be arranged in a distributed computer system, interconnected by any suitable means ... as would be known to one of ordinary skill in the art.
Paul at ¶ 29 (numerals added). This boiler-plate language merely describes the amount or type of structure (or number of algorithms) that may be used to implement the system. Put differently, while the quoted text envisions that multiple steps may be carried out by a single element, it contains no suggestion to combine tools in order to perform steps 'not otherwise disclosed. And because paragraph 29 fails to mention either the direct-email tool or the refer-a-friend tool, or any of the tools’ specific functions, I do not view the paragraph as an express contemplation to combine the two tools.[3] The Board also quoted from paragraphs 50, 51, and 100 of Paul, but those paragraphs only state that the direct-email and refer-a-friend tools are both part of the campaign manager. They do not suggest that the two tools would be — or could be — combined in any way.
I view the facts here as being similar to those in Net MoneyIN. There, the claimed “Internet payment system” comprised five links, and the district court found the invention anticipated by a reference disclosing all five links within the four corners of the reference. Net MoneyIN, 545 F.3d at 1368-69. We reversed, concluding that the district court “wrong[ly] combine[d] parts of [two] separate protocols,” each of which included some of the claimed links, to find anticipation. Id. at 1371. In reaching that conclusion, we explained that even though “there may be only slight differences between the protocols disclosed in the [prior, art] reference and the [claimed] system,” such differences “invoke the question of obviousness, not anticipation.” Id. Here, just as in Net *1356 MoneyIN, the combination of the direct-email and refer-a-friend tools similarly invokes the question of obviousness because the Board combined specific functions of two separate tools to find anticipation. Thus, I conclude that, like the district court in Net MoneyIN, the Board erred here because “it is not enough that [Paul] discloses part of the claimed invention, which an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention.” Id.
In sum, I believe the record evidence does not contain an express or inherent disclosure (or even an express contemplation) of the combined use of the direct-email and refer-a-friend tools. The evidence, at most, it seems to me, reveals that Paul discloses a single system with multiple tools that are capable of functioning together. This is not enough for anticipation. The Board’s “analysis [therefore] goes astray because it assumes what [Paul] neither disclose[s] nor render[s] inherent.” Perricone, 432 F.3d at 1379.
For the foregoing reasons, I respectfully dissent from the court’s affirmance of the Board’s finding that Paul anticipates claim 2 of the '516 patent, as well as its affir-mance of the Board’s finding that Paul anticipates claims of the other patents at issue in the case.

. This provision has since been amended. See Leahy-Smith America Invents Act ("AIA”), Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287 (2011). However, because the pending claims have an effective filing date before March 16, 2013, the pre-AIA § 102(b) applies. See AIA, 125 Stat. at 293; In re Giannelli, 739 F.3d 1375, 1376 n. 1 (Fed.Cir.2014).

. We have stated that filling in the gaps in a reference by using the understanding of one skilled in the art to find anticipation indicates reliance on a theory of inherency. See Finnigan Corp. v. Int'l Trade Comm’n, 180 F.3d 1354, 1365 (Fed.Cir.1999) (concluding that the Administrative Law Judge relied on inher-ency in finding the claims anticipated because he "was able to close th[e] gap between the [prior art reference] and the claim” by relying on the understanding of one skilled in the art); Cont'l Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1268 (Fed.Cir.1991) (explaining that “when [a] reference is silent about [an] asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence ... [which] must make clear that the missing descriptive matter is necessarily present in the thing described in the reference...."). Although I do not read the majority opinion as adopting the view that the Board relied on inherency in this case, to the extent the Board's decision may be read that way, I believe the record evidence is insufficient to establish inherent anticipation. Groupon failed to show that the combination of the direct e-mail and refer-a-friend tool options is "necessarily present” in Paul. Groupon's expert, Dr. Joshi, in fact, acknowledged that using Paul’s system does not require either the direct-email or refer-a-friend tools to be used at all, let alone in conjunction. Moreover, the Board’s finding that the tools are "different tool options of the campaign manager” reveals that they do not necessarily have to be used together because "options” are, by their very nature, not necessary. As for Dr. Joshi's conclusion that the tools "can be used with one another," it seems to me that, if he is correct, this testimony suggests only a possible use, not an inherent use.

. In sharp contrast to the generic language of paragraph 29, the portion of the prior art reference in Kennametal that we viewed as an express contemplation of the claimed coating stated that "applicants also contemplate that one or more layers of a coating scheme may be applied by physical vapor deposition.” 780 F.3d at 1380 (emphases added). Based on that explicit disclosure, we concluded that "a person of skill in the art ... would immediately envisage applying a [physical vapor deposition] coating.” Id. at 1383.