NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NERA INNOVATIONS LIMITED,**
*Appellant*

**v.**

**JOHN A. SQUIRES, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2024-1079

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-00573.

---

Decided: October 24, 2025

---

ROBERT AUCHTER, Auchter PLLC, Washington, DC, argued for appellant. Also represented by BRETT E. COOPER, BC Law Group, PC, New York, NY.

ROBERT MCBRIDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for

intervenor.  Also represented by PETER J. AYERS, MONICA BARNES LATEEF.

_____

Before PROST, CUNNINGHAM, and STARK, *Circuit Judges*.

PROST, *Circuit Judge*.

Nera Innovations Limited ("Nera")[1] appeals a final written decision of the Patent Trial and Appeal Board ("Board") in an inter partes review brought by Apple Inc. The Board determined all challenged claims of U.S. Patent No. 7,825,537 ("the '537 patent") are unpatentable.  *Apple Inc. v. Scramoge Tech. Ltd.*, No. IPR2022-00573, Paper 32 (P.T.A.B. Sep. 11, 2023) ("*Decision*").  We affirm.

## BACKGROUND

The '537 patent is directed to systems and methods for inductively transferring power from a base unit to a target unit.  '537 patent col. 1 ll. 50–55.  It purports to "enhanc[e] power transfer efficiency" by monitoring and adjusting operating conditions of the inductive coils in the base and target units.  *Id.* at col. 4 ll. 20–29.

In its final written decision, the Board determined the challenged claims (i.e., claims 1–22 and 28) to be unpatentable based on numerous grounds including anticipation and obviousness.  In this appeal, Nera only challenges the Board's determinations that dependent claims 16 and 19–22 are unpatentable for obviousness.  Appellant's Br. 4.

Nera timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

_____

[1]    After this appeal was filed, the prior assignee, Scramoge Technology Limited, transferred ownership of the patent at issue to Nera and moved to substitute Nera as the Appellant, which we granted.

## DISCUSSION

Nera makes two arguments on appeal: (1) the Board erred in its construction of the "coupled" limitation, and (2) the Board failed to articulate a sufficient motivation to combine prior-art references Flowerdew[2] and Jang.[3]  We address each in turn.

"We review the Board's factual findings for substantial evidence and its legal conclusions without deference." *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015).

I

Nera disputes the Board's construction of the term "coupled" in claim 15, from which appealed claim 16 depends.  The limitation in question reads "a load circuit coupled to said first inductive element." '537 patent claim 15. The Board rejected the patent owner's argument that "coupled" is limited to an electrical connection, noting that other claims use the term "electrically coupled," and that specification embodiments cannot be used to rewrite the claim language. *Decision*, at 42–44.  The Board found that Flowerdew's teaching of a "sense coil" interface, which is inductively or magnetically coupled to the first inductive element, meets the limitation.  *Id.* at 40–44.

We agree with the Board.  "Differences among claims can . . . be a useful guide in understanding the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed. Cir. 2005) (en banc).  Claim 15 simply recites "coupled," while claims 23 and 27 recite "electrically coupled."  This difference demonstrates that the patentee knew how to limit the claims to an electrical connection but chose not to do so for claim 15.  Nera's arguments that the

---

[2]    U.S. Patent No. 7,211,986 ("Flowerdew").
[3]    U.S. Patent App. Pub. No. 2004/0218406 ("Jang").

specification embodiments only describe electrical connections to the first inductive element, Appellant's Br. 28, do not persuade us that the term "coupled" in claim 15 is limited to an electrical connection. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims.").

Nera's argument that claim 14's use of the word "coupling" restricts any "coupled" elements to being electrically connected, Appellant's Br. 25–28, is similarly unavailing. Nera's argument is premised on: (1) like words (e.g., "coupling" and "coupled") being interpreted alike; and (2) the nature of the elements coupled in claim 14 necessitating an electrical connection, because there is allegedly no other way for the recited "DC voltage source" to be coupled to the "first inductive element." Even accepting Nera's argument that the DC voltage source and first inductive element could only be coupled via an electrical connection, it does not necessarily follow that a different coupling between different elements must also constitute an electrical connection. Claim 15 recites "*a load circuit* coupled to said first inductive element." '537 patent claim 15 (emphasis added). Claim 14's "coupling," which is between different elements—a DC voltage source and the first inductive element—does not limit the "coupled" elements of claim 15.

We therefore affirm the Board's construction.

## II

Next, Nera argues that the Board failed to articulate a sufficient motivation to combine Flowerdew and Jang.

Whether one of skill in the art would have been motivated to combine prior-art references is a factual question that we review for substantial evidence. *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023). "Substantial evidence is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017) (cleaned up).

Here, substantial evidence supports the Board's determination that a skilled artisan would have been motivated to combine Flowerdew and Jang. In its analysis, the Board found that (1) Flowerdew's description of its oscillator is "simplified"; (2) Flowerdew expressly teaches that various designs and components can be adopted to implement its charging circuit; and (3) modifying Flowerdew's charging system to include Jang's inverter would "provide a way to implement Flowerdew's digital driver." *Decision*, at 37–38. That is, Jang's inverter supplies the missing implementation details for the oscillator in Flowerdew's charger. The disclosures of the references support these findings. *E.g.*, Flowerdew col. 6 ll. 8–13 (describing the "simplified circuit diagram shown in FIG. 2"); *id.* at col. 6 ll. 8–13 ("[o]ther circuit elements and arrangement may be utilized"); *id.* at col. 5 ll. 16–19 (describing controller and oscillator used to provide "a high frequency A.C. signal to drive a charger coil"); Jang ¶¶ [0021]–[0027] (describing inverter switches used to provide variable current to an inductive coil).

Rather than relying on the mere fact that the elements existed in the prior art, the Board here set forth a motivation—one would have looked to Jang for details as to how to implement Flowerdew's charger—that is supported by substantial evidence, as discussed above.

## CONCLUSION

We have considered Nera's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's final written decision.

## **AFFIRMED**